UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAYSA ASHHAB-JONES,

       *Plaintiff*,

  v.

CHEROKEE NATION STRATEGIC
PROGRAMS, LLC,

       *Defendant*.

Civil Action No. 1:19-cv-00089 (CJN)

## MEMORANDUM OPINION

Maysa Ashhab-Jones filed this lawsuit against Cherokee Nation Strategic Programs, LLC ("CNSP"), alleging Title VII discrimination based on gender, religion, national origin and background, and retaliation for filing an EEO complaint and seeking relief in retroactive reinstatement, back pay, and damages. *See generally* Compl., ECF No. 1. CNSP moves to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. *See generally* Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 8. For the reasons that follow, the Court grants CNSP's Motion.

### I.    Background

Ashhab-Jones is an Arab-American woman of Palestinian descent. In August 2012, she was hired by All Native, a CNSP predecessor, Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") at 3, 18, ECF No. 13, to work at the U.S. Embassy in Baghdad, Iraq as part of a State Department contract. Compl. ¶ 6.[1] Ashhab-Jones worked in the communication section of the Information Resource

---

[1] While the Court, when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged," *Holy Land Found. for Relief*

1

Management section at the Embassy.  Pl.'s Opp'n at 18.  Her work involved deploying software to Embassies and Consulates in Iraq, training staff, and coordinating with personnel in Virginia and the District of Columbia.  *Id.* at 18–19.  Ashhab-Jones supported Embassy offices that directly corresponded with State Department staff in the District of Columbia and reports of her work were transmitted to State Department offices in the District.  *Id.* at 19.  Ashhab-Jones was also in contact with the Iraqi Embassy in the District and had access to State Department online links and mission information stored in the District.  *Id.* at 20.

CNSP is registered to do business in the District of Columbia, *id.* at 17, and had a contract with the State Department's Bureau of Near Eastern Affairs, which is headquartered in the District, *id.*  Contracting officers, records, and other information relevant to this case are located in the District.  *Id.* at 1.  Ashhab-Jones's primary interactions in the events leading to this litigation were with Iris Berry-Prewitt, the on-site CNSP manager in Baghdad, and Jeffrey Myers, a State Department employee who supervised her work.  *See generally* Compl.  Ashhab-Jones also frequently communicated about the alleged discriminatory conduct via email and phone with CNSP's operations general manager, Brad Barnhart, and human resources senior officer, Lydia Horner, neither of whom worked in the District of Columbia.  *See* Def.'s Mot. Ex. B ¶ 16, ECF No. 8-3.

---

*& Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)), "the Court is not required to treat as true all of plaintiff['s] allegations when determining whether personal jurisdiction exists." *Fuentes-Fernandez & Co., PSC v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 280 (D.D.C. 2011) (citing *United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)).  Instead, when evaluating a motion to dismiss based on lack of personal jurisdiction, Plaintiff's assertions of fact are "presumed to be true unless directly contradicted by affidavit" or other evidence.  *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 20 (D.D.C. 2002) (citation omitted).

In August 2016,[2] Ashhab-Jones filed an EEO complaint with the State Department to report sexual harassment and gender discrimination by Myers "and others." Compl. ¶ 7. Following an investigation into her claims, Ashhab-Jones experienced further harassment and discipline, and was eventually discharged by CNSP. *Id.* In January 2017, Berry-Prewitt allegedly singled out Ashhab-Jones by scrutinizing her timesheet and work habits and "accus[ing her] of failing to meet contract requirements," *id.* ¶ 8, and "committing timesheet fraud," *id.* ¶ 23. In response, Ashhab-Jones provided documentation to CNSP's operations general manager and human resources senior officer to defend against the accusation that she had falsified her timesheets. *See id.* ¶ 9. Both employees apologized to Ashhab-Jones and remarked that there had been a miscommunication. *Id.* ¶ 10. Ashhab-Jones remained in contact with both employees for the next few months and expressed her concern that she was being retaliated against for her EEO complaint. *Id.* ¶ 11.

In April, Ashhab-Jones's timesheet was again targeted for additional scrutiny by CNSP, and a State Department employee (named in Ashhab-Jones's EEO complaint) conducted an unauthorized investigation into her computer. *Id.* ¶ 14. CNSP disciplined Ashhab-Jones for timesheet infractions by issuing a verbal warning, *id.* ¶ 16, and placed her on a Performance Improvement Plan, *id.* ¶ 19. Around the same time, in March or April 2017, Ashhab-Jones was notified by her CNSP supervisor, Jaime Esquivel, that her contract position would end in summer 2017. *Id.* ¶ 20. On May 9, 2017, the State Department issued a Loss of Confidence statement to CNSP regarding Ashhab-Jones and requested her immediate removal. *Id.* ¶ 21. CNSP also denied

---

[2] CNSP entered into its contract with the State Department to perform services in Baghdad, Iraq on October 15, 2016. *See* Def.'s Mot. Ex. B ¶ 14. The Court understands the first sexual harassment incident to have occurred while Ashhab-Jones worked for CNSP's predecessor, All Native. Pl.'s Opp'n at 18. While the timing of the sexual harassment may be relevant to the underlying discrimination and retaliation claims, the timing and contract transition are not relevant to the personal jurisdiction analysis.

Ashhab-Jones's request to work "short days or to be on call" during a Muslim holiday (during which the Embassy would be closed). *Id.* ¶ 23. Other employees had been permitted to work short days on other religious holidays, *id.*, and on July 2, Ashhab-Jones complained to her supervisors about the disparate treatment, *id.* ¶ 24.

Ashhab-Jones received no response to her complaint. On July 10, she tendered her resignation, but withdrew the resignation later that day. *Id.* ¶¶ 24–25. Ashhab-Jones was not permitted to remain in the office or retain her employment and was removed from the Embassy two days later. *Id.* ¶¶ 25–27. Ashhab-Jones asserts that she "was involuntarily separated from [her] employment." *Id.* ¶ 28.

Ashhab-Jones filed an administrative complaint with the EEOC in Oklahoma, and on October 18, 2018, the EEOC granted her a right to sue letter. *Id.* at 10. At the time of the Complaint's filing, Ashhab-Jones's EEO complaint was pending before an EEOC Administrative Law Judge. *Id.* On January 3, 2019, Ashhab-Jones filed this Title VII action against CNSP, an Oklahoma LLC, alleging discrimination based on gender, religion, national origin and background, and retaliation for filing an EEO complaint against her supervisor and others. *Id.* ¶ 1. On March 28, 2019, CNSP moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. *See generally* Def.'s Mot.

## II.     Legal Standard

A federal court has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Thus, if a District of Columbia court could exercise jurisdiction over CNSP, then so can this Court. *E.g.*, *West v. Holder*, 60 F. Supp. 3d 190, 193 (D.D.C. 2014).

While courts usually decide questions of subject-matter jurisdiction first, this Court may instead begin with the personal jurisdiction question. *See Grand Council of the Crees v. FERC*,

4

198 F.3d 950, 954 (D.C. Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)) ("[T]here is no mandated 'sequencing of jurisdictional issues.'").

There are two types of personal jurisdiction: "[1] general or all-purpose jurisdiction[] and [2] specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A defendant is subject to general jurisdiction when the defendant's affiliations with the forum State are so continuous and systematic as to render the defendant "at home" in the forum State. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Specific jurisdiction, on the other hand, "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id.* at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

To establish specific jurisdiction over a non-resident, the Court "must first examine whether jurisdiction is applicable under the [D.C.] long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citation omitted). The D.C. long-arm statute authorizes specific jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from" certain contacts that person may have with the forum. D.C. Code § 13-423(a) (2020). As relevant here, a defendant's contacts with the District of Columbia can establish specific jurisdiction if the claim arises from the defendant's:

> (1) transacting any business in the District of Columbia;
>
> . . .
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of

>conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

§ 13-423(a). "When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in [subsection 13-423(a)] may be asserted against him." § 13-423(b).

Even if a plaintiff satisfies the D.C. long-arm statute, jurisdiction over a defendant must still fall "within the permissible bounds of the Due Process Clause. In other words, a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A plaintiff bears the burden of establishing personal jurisdictional over each defendant.[3] *See First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988); *Pinkett v. Dr. Leonard's Healthcare Corp.*, 2019 WL 1992904, at *2 (D.D.C. 2019) ("[T]he requirements for personal jurisdiction 'must be met as to each defendant.'") (citation omitted). "In determining whether [personal jurisdiction] exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) (citation omitted). However, "a court need not accept the plaintiff's 'conclusory statements' or 'bare allegations' regarding the defendant's actions in a selected forum." *Shaheen v. Smith*, 994 F. Supp. 2d 77, 81 (D.D.C. 2013) (citing *GTE New Media*, 199 F.3d at 1349).

---

[3] Because Ashhab-Jones filed the Complaint *pro se* and only later retained counsel, the Court is required to construe the Complaint liberally, *see, e.g.*, *Reid v. Hurwitz*, 920 F.3d 828, 830 (D.C. Cir. 2019), and must "hold [it] to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### III.    Analysis

This Court cannot exercise personal jurisdiction over CNSP because CSNP does not maintain its domicile nor its principal place of business within the District and because the harm at the core of Plaintiff's claim did not occur in or arise from business transacted in the District.

### A.    General Jurisdiction

Under D.C. Code § 13-422, general jurisdiction requires the party to be "domiciled in, organized under the laws of, or maintain[] his or its principal place of business in" the District of Columbia.  "A defendant's contacts within the District under Section 13-422 must be 'continuous and systematic' in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the District." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 43 (D.D.C. 2018) (citation omitted).

CNSP is an Oklahoma LLC and is thus not domiciled here.  Compl. ¶ 4.  CNSP asserts that it "does not maintain any offices in the District of Columbia," "does not own or rent property in the District of Columbia," and "does not maintain bank accounts in the District of Columbia." Def.'s Reply Pl.'s Opp'n ("Def.'s Reply") at 13, ECF No. 17.  None of these assertions are contested by Ashhab-Jones.

Ashhab-Jones argues that this Court has personal jurisdiction over CNSP because "Defendant is registered to do business in the District of Columbia," "has multiple contacts with the District of Columbia," and is "doing millions of dollars with federal agencies located in D.C." Pl.'s Opp'n at 17.  That CNSP is registered to do business in the District and has entered into contracts with the federal government is insufficient to confer general jurisdiction under District of Columbia law.  *See Bond v. ATSI/Jacksonville Job Corps Ctr.*, 811 F. Supp. 2d 417, 423 (D.D.C. 2011).  And merely maintaining professional relationships with persons and entities in the District is not sufficient to establish general jurisdiction.  *See Alkanani v. Aegis Def. Servs., LLC*, 976 F.

Supp. 2d 13, 35 (D.D.C. 2014) (concluding that a corporation's contacts with the District of Columbia, including a website and contacts with non-government clients, were insufficient to establish personal jurisdiction).

Ashhab-Jones further argues that CNSP's revenue streams and hiring practices establish that its business contacts in the District of Columbia are continuous and systematic.  Pl.'s Suppl. at 2, ECF No. 24 ("CNSP receives revenue from doing business in D.C. . . . .  CNSP also continues to recruit for employees to fill D.C.-based jobs, so that is [sic] can continue to derive revenue by staffing D.C.-locales.").  While hiring practices in the District are indicative of business activity in the city, such practices do not render the District CNSP's domicile nor its principal place of business.

Ashhab-Jones's arguments primarily focus on *her* contacts with the District, not CNSP's.  While those facts are relevant to an analysis of specific jurisdiction, *see infra,* they do not establish general jurisdiction with respect to CNSP.  *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum." (emphasis added)).

Even assuming CNSP's contacts with the District—which arise out of its contracting with federal agencies—were enough to establish general jurisdiction, they are exempted for personal jurisdiction purposes under the government contacts exception.  The "government contacts exception precludes the assertion of personal jurisdiction over a non-resident whose only contacts with the District of Columbia are for purposes of dealing with a federal agency or Congress."  *Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 434 (D.D.C. 1992); *see also Envtl. Res. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976).  Given the District's unique

8

character as the home of federal government, this exception maintains unobstructed access to the instrumentalities of the federal government. *See Dooley*, 803 F. Supp. at 428, 434; *see also Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182, 1196–99 (D.D.C. 1984). A business does not maintain its domicile within the District by merely maintaining an office and staff within the District for purposes of maintaining contact with federal agencies. *See Norair Eng'g Assocs., Inc. v. Noland Co.*, 365 F. Supp. 740, 742–43 (D.D.C. 1973) (citing *Mueller Brass Co. v. Alexander Milburn Co.*, 152 F.2d 142 (D.C. Cir. 1945)) (discussing the general jurisdiction exception of an office staffed for the purpose of maintaining contact with agencies of the United States government); *see also Mut. Int'l Exp. Co. v. Napco Indus., Inc.*, 316 F.2d 393, 397 (D.C. Cir. 1963) (Wright, J., concurring) (finding that the conduct that justified exercising personal jurisdiction "was substantially more than mere solicitation of contracts from government agencies").

### B.   Specific Jurisdiction

Specific personal jurisdiction turns on the affiliation between the forum and the underlying controversy. As noted above, "[a] plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094–95 (D.C. Cir. 2008) (citing *GTE New Media Servs.*, 199 F.3d at 1347). As relevant here, the District of Columbia's long-arm statute, D.C. Code § 13-423, permits the exercise of specific jurisdiction over a defendant when the defendant causes any "tortious injury in the District of Columbia," § 13-423(a)(3)–(4), or when the plaintiff's claim for relief arises out of the defendant's "transacting any business in the District of Columbia," § 13-423(a)(1). Subsection 13-423's reach, however, is subject to the government contacts exception, which excludes "entry into the District of Columbia by nonresidents for the purposes of contacting federal government agencies" as a basis for the assertion of *in personam* jurisdiction. *Envtl. Res.*

*Int'l*, 355 A.2d at 813.  Ashhab-Jones does not allege any injury in the District, and the government contacts exception excludes CNSP's contacts with the State Department that may otherwise count as "transacting . . . business" within the District.

First, Ashhab-Jones has not sufficiently alleged that she suffered an injury "in the District of Columbia."  D.C. Code § 13-423(a)(3).  To be sure, Ashhab-Jones alleges that she and CNSP had frequent contact with the District because of the nature of her work, but these allegations do not establish an injury in the District.  Instead, Ashhab-Jones alleges that she worked for CNSP "in a U.S. Embassy in Iraq," Pl.'s Opp'n at 16, and the gravamen of her claims is that she was discriminated against while working for CNSP in Iraq, *see* Compl. ¶ 2.  Moreover, her Complaint and her briefs are devoid of any allegation that she was ever physically present in the District, and CNSP has proffered unrebutted evidence that "[n]o CNSP work performed under the Contract took place in Washington, D.C." Def.'s Mot. Ex. B. ¶ 16.[4]  Ashhab-Jones's work with her contracting counterparts in the District are, without more, insufficient to establish that she suffered injury in the District as required by D.C. Code § 13-423(a)(3).

Second, Ashhab-Jones has not sufficiently demonstrated that her claim arises out of CNSP's transacting business in the District.  To satisfy the "transacting business" prong of the long-arm statute, a plaintiff must prove:  "First, that the defendant transacted business in the

---

[4] Ashhab-Jones argues that she worked at the U.S. Embassy in Baghdad and also in the District of Columbia, but even a cursory reading of her Complaint demonstrates that her allegations of working in the District are nothing more than references to the originating point of her assignments. *See, e.g.*, Compl. ¶ 2 ("I worked at and discriminatory acts occurred a [sic] Department of State's (DOS) site and in Washington, D.C.  I worked at the U.S. Embassy in Baghdad, and on information and belief, contracting officers, records, and other information relevant to this case is in Washington D.C. [sic]."); *see also* Pl.'s Suppl. at 3 ("Ms. Ashhab has shown CNSP has a contract with the State Department, but also that she regularly did work in D.C. under that contract.  As Ms. Ashhab pled and discussed in the joint employer context, she also was supervised by State officials and followed D.C.-originated directives, all while employed under the CNSP contract.").

10

District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia." *Alkanani*, 976 F. Supp. 2d at 24 (quoting *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 227 (D.D.C. 2005)).

Ashhab-Jones relies primarily on the fact that CNSP's work in Baghdad was pursuant to a contract with the State Department, which she argues is the link between the District and her claims against CNSP. *See generally* Pl.'s Opp'n at 14–18. But Ashhab-Jones does not allege or provide any evidence "that the parties here negotiated or executed the Contract in the District of Columbia." *Alkanani*, 976 F. Supp. 2d at 25. And again, CNSP has provided unrebutted evidence that it "neither signed the Contract nor negotiated the terms of the Contract in the District of Columbia." Def.'s Mot. Ex. B ¶ 15.

Even if CNSP had negotiated and signed its contract with the State Department in the District, the contract could not be the basis for the exercise of personal jurisdiction because it is "well established that contract negotiations *with the federal government* are excluded from the jurisdictional analysis." *Alkanani*, 976 F. Supp. 2d at 25; *see also Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 25 (D.D.C. 2018) ("This Court has consistently held that government contracting activities fall within the scope of the government contacts rule."). As the D.C. Court of Appeals has put it:

> The rationale for the "government contacts" exception to the District of Columbia's long-arm statute does not hinge upon the wording of the statute. Rather, it finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

11

*Envtl. Res. Int'l*, 355 A.2d at 813.  Even if CNSP had negotiated and signed its State Department contract in the District, those interactions would fall squarely within the government contacts exception and could not support the exercise of personal jurisdiction.  *See id.*

## IV.   Conclusion

For the foregoing reasons, Defendant CNSP's Motion to Dismiss is **GRANTED**.  An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  October 23, 2020

CARL J. NICHOLS
United States District Judge